**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1119**

Bradley Wayne Foster,
Appellant,

vs.

Lucinda Jesson, Commissioner of Human Services,
Respondent.

**Filed December 22, 2014**
**Affirmed**
**Rodenberg, Judge**

St. Louis County District Court
File No. 69HI-PR-06-37

Todd E. Deal, Virginia, Minnesota (for appellant)

Lori Swanson, Attorney General, Adam Hoiland Welle, St. Paul, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Reyes, Judge.

## S Y L L A B U S

When a judicial appeal panel dismisses a civil-commitment transfer petition under Minn. R. Civ. P. 41.02(b), the standard of appellate review is clear error.

## O P I N I O N

**RODENBERG**, Judge

Appellant Bradley Wayne Foster challenges the denial of his petition for transfer or discharge from civil commitment, arguing that the judicial appeal panel erred in

granting the commissioner's motion to dismiss his petition under Minn. R. Civ. P. 41.02(b). We affirm.

**FACTS**

Appellant was committed as a sexual psychopathic personality and sexually dangerous person on March 14, 2007.[1] In January 2013, appellant petitioned the special review board for discharge or transfer to a nonsecure Minnesota Department of Human Services facility, otherwise known as community preparation services (CPS).[2] The special review board held a hearing on the petition on February 12, 2013, at which the board heard the testimony of appellant and Minnesota sex offender program (MSOP) employees, and considered the results of several risk assessment tests as applied to appellant. The special review board recommended that appellant be denied a transfer or discharge.

Appellant requested rehearing and reconsideration by the judicial appeal panel under Minn. Stat. § 253D.28 (Supp. 2013). The judicial appeal panel held a first-phase hearing on January 31, 2014. Dr. Paul Reitman, one of the psychologists who had testified at appellant's initial commitment hearing, testified on behalf of appellant and

---

[1] Appellant's background and offense history are set forth in *In re Civil Comm't of Foster*, No. A07-1564, 2008 WL 133918 (Minn. App. Jan. 15, 2008).

[2] Appellant also filed a Minn. R. Civ. P. 60.02 motion for relief from judgment in his original commitment case on February 4, 2013. The district court denied the motion, and we affirmed on appeal. *In re Civil Comm't of Foster*, No. A13-0729, 2013 WL 5024488 (Minn. App. Sep. 16, 2013), *review denied* (Minn. Nov. 26, 2013).

2

also prepared a written report, which was received in evidence.[3] On direct examination by appellant's counsel, Dr. Reitman initially indicated that he supported appellant's transfer to CPS, based on a clinical interview, appellant's psychological testing, and the availability of intensive supervised release. However, he did not support discharge:

> [COUNSEL:] Now just to be clear once again, you do not support the petition for full discharge?
> [DR. REITMAN:] No.
> [COUNSEL:] And you believe that he is currently in need of inpatient sex offender treatment?
> [DR. REITMAN:] Yes.
> [COUNSEL:] And that a full discharge to the public would not be adequate protection for the public? It could not be done in a manner in which the public would be sufficiently protected from Mr. Foster?
> [DR. REITMAN:] That's correct.

On cross-examination, Dr. Reitman was asked whether appellant had completed a full-disclosure polygraph and whether appellant had missed 16 group sessions. Dr. Reitman testified that he was under the impression that appellant had taken a full-disclosure polygraph, and opined that "[i]f [appellant] has not yet done that, consistent with other cases I've had I would say that has to happen first" before he could recommend appellant's transfer to CPS. It is undisputed that appellant had not completed a full-disclosure polygraph before the hearing. With that corrected understanding, Dr. Reitman amended his recommendation and testified that appellant would need to complete and pass the full-disclosure polygraph before transfer would be appropriate.

---

[3] The commissioner also submitted her exhibits, but "given the Minnesota Supreme Court ruling in [*Coker v. Jesson*] . . . and in the abundance of caution," the only exhibit the judicial appeal panel considered was Dr. Reitman's report.

Based on the absence of such a polygraph, Dr. Reitman testified that he could support neither discharge nor transfer.

The commissioner moved for dismissal of the petition under Minn. R. Civ. P. 41.02(b) after Dr. Reitman's testimony and without presenting evidence. The judicial appeal panel granted the motion, first concluding that appellant failed to "make even a minimal showing that he is no longer in need of treatment or that he is no longer a danger to the public," as required for discharge. The judicial appeal panel then evaluated the statutory transfer factors of Minn. Stat. § 253D.29, subd. 1(b) (Supp. 2013), and concluded that appellant had failed to establish grounds for a transfer by a preponderance of the evidence, due to his missed group meetings and based on Dr. Reitman's testimony that appellant, having not yet completed a full-disclosure polygraph, is not an appropriate candidate for transfer. This appeal followed.

## ISSUES

I.      Did the judicial appeal panel err in concluding that appellant's petition for transfer was not supported by a preponderance of the evidence?

II.      Did the judicial appeal panel err in concluding that appellant failed to meet his burden of production to establish that he is entitled to discharge?

## ANALYSIS

### I.

Appellant challenges the judicial appeal panel's dismissal of his petition for transfer from MSOP. He argues that the testimony of Dr. Reitman, the only testimony

4

presented by appellant in his case-in-chief, was sufficient to defeat the motion for dismissal at the close of his case.

The commissioner's motion to dismiss the petition was made pursuant to Minn. R. Civ. P. 41.02(b) (2012), which provides:

> After the plaintiff has completed the presentation of evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law, the plaintiff has shown no right to relief.  In an action tried by the court without a jury, the court as trier of the fact may then determine the facts and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.  If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52.01.

This rule operates differently depending on whether the judicial appeal panel is considering a petition for transfer or for discharge.

Typically, when a rule 41.02(b) motion is made at a bench trial, the district court is not required to view the evidence in the light most favorable to the plaintiff and is allowed to judge the credibility of witnesses when making its findings of fact.  *Coker v. Jesson*, 831 N.W.2d 483, 489-90 (Minn. 2013) (citing *State ex rel. Burnquist v. Bollenbach*, 241 Minn. 103, 109, 63 N.W.2d 278, 283 (1954)).  But the supreme court has held that rule 41.02(b) motions to dismiss *discharge* petitions cannot be considered by the judicial appeal panel under this standard.  *Id.* at 490.  "Allowing the fact-finder to weigh the evidence" and make credibility assessments "effectively elevates the burden imposed on the committed person" beyond the required burden of production, and this "conflict" between rule 41.02(b) and the commitment statutes "renders the rule inapplicable."  *Id.* (quotation omitted).  The judicial appeal panel therefore is required to

5

"view the evidence . . . in a light most favorable to the committed person" when a rule 41.02(b) motion is made to dismiss a petition for *discharge*. *Id.* at 491. This procedure is analogous to a directed verdict motion, and we, therefore, recently held that appellate review of a dismissal of a petition for discharge or provisional discharge under rule 41.02(b) is de novo. *See Larson v. Jesson*, 847 N.W.2d 531, 534 (Minn. App. 2014).

But, unlike a discharge petition, a petition for transfer imposes the burdens of production *and* persuasion on the petitioner at the hearing before the judicial appeal panel. *See* Minn. Stat. § 253D.28, subd. 2(e) ("A party seeking transfer under section 253D.29 must establish by a preponderance of the evidence that transfer is appropriate.").[4] Because the petition for transfer imposed the burden of persuasion on appellant, there is no "conflict" between the commitment statute and rule 41.02(b); thus, the reasoning of *Coker v. Jesson* is inapplicable to his transfer petition. Therefore, because the judicial appeal panel sat as trier of fact and rendered judgment against appellant in written findings, as would a district court in a rule 41.02(b) determination during a court trial, the findings of the judicial appeal panel concerning a petition for transfer are properly reviewed for clear error. *See Bollenbach*, 241 Minn. at 109, 63 N.W.2d at 283; *see also Rydberg v. Goodno*, 689 N.W.2d 310, 313 (Minn. App. 2004) ("Findings of fact will not be reversed if the record as a whole sustains those findings.").

---

[4] As of 2009, committed persons only had the burden of production in petitioning for transfer. *Coker v. Ludeman*, 775 N.W.2d 660, 664-65 (Minn. App. 2009). The legislature added the "preponderance of the evidence" standard for transfer petitions in a 2010 amendment to the commitment statutes. 2010 Minn. Laws ch. 300, § 27 at 764. Preponderance of the evidence was the common law standard previously applied to transfer requests under commitment statutes. *See Linder v. Comm'r of Human Servs.*, 394 N.W.2d 824, 827 (Minn. App. 1986).

In evaluating whether a petitioner has demonstrated the appropriateness of transfer by a preponderance of the evidence, "[t]he panel must address the statutory factors." *Piotter v. Steffen*, 490 N.W.2d 915, 919 (Minn. App. 1992), *review denied* (Minn. Nov. 17, 1992). Those factors are:

> (1)    the person's clinical progress and present treatment needs;
> (2)    the need for security to accomplish continuing treatment;
> (3)    the need for continued institutionalization;
> (4)    which facility can best meet the person's needs; and
> (5)    whether transfer can be accomplished with a reasonable degree of safety for the public.

Minn. Stat. § 253D.29, subd. 1(b)(1)-(5).

Here, the state of the record evidence at the close of appellant's case-in-chief would be insufficient even if appellant had only the burden of production. Dr. Reitman's testimony, considered in its entirety, supported neither discharge nor transfer. Dr. Reitman opined that, until appellant successfully completes the full-disclosure polygraph, appellant is not an appropriate candidate for transfer. But appellant also had the burden of persuasion. And appellant's counsel, while suggesting in response to the rule 41.02(b) motion that the case could be continued to secure the polygraph, never formally requested a continuance. The judicial appeal panel then considered the statutory factors and found appellant unsuitable for transfer. In light of Dr. Reitman's testimony, "the record as a whole sustains [the panel's] findings." *See Rydberg*, 689 N.W.2d at 313. The record supports no other conclusion. The judicial appeal panel did not err in dismissing appellant's petition for transfer under rule 41.02(b).

7

## II.

Appellant also argues that he met his burden of production on the issue of discharge at the first-phase hearing through the testimony and report of Dr. Reitman. Appellant's argument on this issue is truncated. And the record contains no evidence at all supporting the petition for discharge. By statute, "[t]he petitioning party seeking discharge . . . bears the burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to requested relief." Minn. Stat. § 253D.28, subd. 2(d); *see also Coker v. Ludeman*, 775 N.W.2d 660, 665 (Minn. App. 2009). On a rule 41.02(b) motion to dismiss a discharge petition at the close of a petitioner's case-in-chief, the judicial appeal panel "may not weigh the evidence or make credibility determinations" regarding discharge, and instead must "view the evidence . . . in a light most favorable to the committed person." *Coker*, 831 N.W.2d at 490-91. We therefore review the judicial appeal panel's dismissal of the petition for discharge de novo. *Larson*, 847 N.W.2d at 534.

Even viewed in the light most favorable to appellant, he failed to satisfy his burden of production. In order for a committed person to be discharged, it must appear that the person is "capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision." Minn. Stat. § 253D.31 (Supp. 2013). Dr. Reitman testified that appellant did not meet these criteria and should not be discharged. While we "view the credibility of the evidence, and every inference which may fairly be drawn therefrom, in favor of the adverse party," *Coker*, 831 N.W.2d at 489 (quotation omitted), there was no competent

evidence produced at any point during the hearing in support of appellant's petition for discharge. The judicial appeal panel did not err in dismissing the petition for discharge under Minn. R. Civ. P. 41.02(b).

## DECISION

We review the judicial appeal panel's rule 41.02(b) dismissal of a civil-commitment transfer petition for clear error. We review the dismissal of a discharge petition de novo. Under the applicable standards, the judicial appeal panel did not err in dismissing appellant's petition for both transfer and discharge under rule 41.02(b).

**Affirmed.**